IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC GOLDEN, | ) |
| Petitioner, | ) |
| v. | ) No. 15 C 8538 |
| NICHOLAS LAMB, Assistant Warden, Stateville Correctional Center, | ) Judge Virginia M. Kendall |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Eric Golden was convicted of two counts of solicitation of murder for hire on January 5, 2005, following a jury trial in Cook County, Illinois. Golden is currently serving his sentence at the Stateville Correctional Center. Golden filed a Petition for Writ of Habeas Corpus[1] pursuant to 28 U.S.C. § 2254. For the following reasons, the Court denies Golden's petition and declines to issue a certificate of appealability.

**I. BACKGROUND**

    **A. Factual Background[2]**

Golden married Chresse Ridley, a Chicago Police Officer, on January 3, 2002. (*See* Dkt. No. 24-3 at 2). Their marriage deteriorated quickly after Golden began drinking and became

---

[1] Assistant Warden Nicholas Lamb was originally named as the respondent in Golden's petition. However, Randy Pfister is Golden's custodian as the current Warden at Stateville Correctional Center and is therefore substituted as the proper respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."); *see also* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] The Court adopts the underlying facts set forth by the Illinois Appellate Court in *People v. Golden*, --- Ill. App. 3d ---, No. 1-05-0099 (1st Dist. 2006) (unpublished) because Golden does not present clear and convincing evidence challenging those facts. *See* 28 U.S.C. § 2254(e)(1); *see also Bolton v. Akpore*, 730 F.3d 685, 687 (7th Cir. 2013) ("Factual determinations by state courts are presumed to be correct in federal habeas corpus proceedings, and the applicant has the burden of rebutting that presumption by clear and convincing evidence.").

"hostile" to Ridley, including attempting to run her off the highway on July 18, 2002 and physically assaulting her on September 6, 2002. (*Id.*)

While in jail awaiting trial for domestic battery, Golden met James Howze and stated that he wanted to "get rid" of Ridley and asked if Howze knew anyone "on the outside" to kill her. (*Id.*) Golden offered to pay half of a $100,000 life insurance policy after Ridley was killed. (*Id.* at 3). He proceeded to write down Ridley's home address, location of a skating rink where she worked, hours she would be there, vehicle description, and license plate number. (*Id.*) Howze went to police and agreed to work with them in the investigation. (*Id.*)

After pleading guilty to domestic battery, Golden was released on probation. (*Id.*) Once released, he phoned his former cell mate, Malcom Reed, to ask him to give Howze his phone number. (*Id.*) Howze contacted Golden at this number on March 26, 29, and April 1, 2003. (*Id.* at 4). Detective Washburn listened in on first conversation and the following two conversations were recorded. (*Id.*) In these conversations, Golden stated that he wanted to go forward with the "demonstration" (murder) and Howze told Golden he would have "Rico" (Officer Rahman Mohammed) contact him to arrange it. (*Id.*) Golden met with Officer Mohammed on March 29, 2003 and again on April 1, 2003. (*Id.*) During these meetings, the two set April 5, 2003 as the "hit" date and discussed payment and strategies to avoid being caught. (*Id.* at 4–5). Golden also gave Officer Mohammed a napkin with Ridley's address, make of her car, and license plate number. (*Id.*)

Golden was arrested on April 7, 2003 at his apartment. (*Id.* at 5). He was interviewed by detectives three times that day and was read his *Miranda* rights on each occasion. (*Id.*) In the third interview, he admitted approaching Howze about murdering Ridley; giving him the paper containing her identifying information; claiming to have a $100,000 life insurance policy on her;

giving Reed his telephone number; and speaking with Officer Mohammed twice to discuss the details of the plot. (*Id.* at 6). That evening, assistant State's Attorney Nick D'Angelo also interviewed Golden, again reading him his *Miranda* rights. (*Id.* at 7). Ultimately, on January 5, 2005, Eric Golden was sentenced to concurrent forty-year sentences for solicitation of murder for hire. (*See* Dkt. No. 24-1 at 169).

### B. Procedural Background

Golden, through his appellate counsel, appealed his conviction to the Illinois Appellate Court on February 24, 2006. (Dkt. No. 24-4). Appellate counsel argued only that trial counsel was ineffective for failing to move to quash Golden's arrest. (*Id.* at 7). Counsel claimed the statements Golden made to police after his arrest would not have been admitted if the arrest was quashed. (*Id.* at 8). There were no other issues raised in the direct appeal. (*Id.* at 3).

The Illinois Appellate Court affirmed Golden's conviction on October 16, 2006. (Dkt. No. 24-3 at 12). In determining whether trial counsel was ineffective for failing to move to quash the arrest, the Court considered whether counsel's performance was deficient and, if it was, whether the deficiency prejudiced Golden. (*Id.* at 7; *See Strickland v. Washington*, 446 U.S. 668 (1984)). The Court concluded both that the statements would have been admissible even if the arrest had been quashed because police had probable cause to arrest Golden and that trial counsel was therefore not ineffective because Golden was not prejudiced by his failure to move to quash the arrest. (Dkt. No. 24-3 at 9, 11); *See New York v. Harris*, 495 U.S. 14, 21 (1990).

On November 20, 2006, Golden filed a *pro se* petition for leave to appeal to the Supreme Court of Illinois. (Dkt. No. 24-6). The petition for leave to appeal was denied on January 24, 2007. (Dkt. No. 24-7).

On November 5, 2007, Golden filed a *pro se* petition for post-conviction relief with the Circuit Court of Cook County raising numerous claims. (Dkt. No. 24-8 at 33). The Circuit Court denied him relief. Golden filed a Notice of Appeal to the Appellate Court of Illinois on February 15, 2012 and an appellate defender was appointed to represent Golden. (*Id.* at 150).

On May 21, 2013, appointed counsel filed an appeal on Golden's behalf setting forth the one claim that he chose to present: the trial court erred in admitting evidence of other crimes. (Dkt. No. 24-10 at 4). Appointed appellate counsel chose to raise the single claim and did not raise any of the other issues from Golden's prior *pro se* petition to the Circuit Court. (*Id.*) Months later, Golden filed a pro se motion on January 8, 2014 seeking leave to supplement the brief submitted by his appointed lawyer with additional arguments. (Dkt. No. 24-13). Although the Appellate Court initially granted Golden's *pro se* motion, the State filed a motion to strike it arguing that it was improper because it violated the rule against hybrid representation and informed the Court that they were never given notice of the filing. The Appellate Court granted the State's motion, reversed its previous ruling that allowed for the supplemental filing and denied leave to Golden to file his *pro se* supplemental brief on January 28, 2014. (Dkt. No. 24-17). The Appellate Court affirmed the Circuit Court's dismissal of the post-conviction petition on the one issue raised by counsel, holding that the other crimes evidence was merely collateral and thus not prejudicial. (Dkt. No. 24-18 at 3).

On January 30, 2015, Golden filed a *pro se* petition for leave to appeal to the Supreme Court of Illinois. (Dkt. No. 24-19 at 3). Golden raised the same issues he raised to the Circuit Court in his petition for post-conviction relief. (*Id.* at 4–6). However, Golden did not appeal the issue of admission of other crimes evidence, the sole issue that had been properly presented to

4

the Appellate Court. (*Id.*; Dkt. No. 24-10 at 4). The Supreme Court of Illinois once again denied Golden's petition for leave to appeal. (Dkt. No. 24–20).

Golden now petitions for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. No. 1). He presents the following grounds for relief:

1. there was insufficient evidence to find him guilty beyond a reasonable doubt;

2. the jury pool was not a fair cross-section of the community and his trial counsel failed to challenge this in a written motion;

and his appellate counsel failed to raise the issue;

3. his trial counsel was ineffective when he failed to question jurors about bias toward gangs;

4. his trial counsel was ineffective in misinforming him about his right to testify;

5. law enforcement questioned him prior to giving him his *Miranda* warnings and his requests for an attorney were denied;

6. the jury was prejudiced by other-crimes evidence;

7. his appellate counsel was ineffective for failing to raise the issue of the introduction of other-crimes evidence on direct appeal; and

8. his trial counsel was ineffective for failing to move to quash his warrantless arrest.

(*Id.* at 7–12, 15–42).

**II. STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs petitions for writs of habeas corpus filed after April 24, 1996. *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of, federal law clearly established by the Supreme Court. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403 (2000). Under the "contrary to" prong of this standard, a habeas petitioner must show that "the state court

confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite [to the Court's]." *Id.* at 405. Under the "unreasonable application" prong, a habeas petitioner must show that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id*. at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir.2005); *see also Williams*, 529 U.S. at 410 (an unreasonable application of federal law is different from an incorrect application of federal law). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (internal citation omitted); *see also Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006) (to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances of the case.").

As a threshold matter, Golden's claims must clear two procedural hurdles: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Exhaustion is satisfied where the habeas petitioner has presented his claims to the highest state court for a ruling on the merits or no state remedies remain available to the petitioner at the time his habeas petition is filed. *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). This requirement provides the State an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Harvey*, 513 U.S. 364, 365 (1995) (*per curiam*) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court

to the federal nature of the claim." *Bolton*, 730 F.3d at 694-95 (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted)). However, failure to exhaust a claim does not necessarily preclude the claim. Where "'state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(b)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim.'" *Id*. at 696 (quoting *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004)).

Procedural default, meanwhile, occurs where the petitioner fails to fairly and properly raise an issue on direct appeal or post-conviction review, or where the state court relies on a state procedural bar as an independent basis for its disposition of the case. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Of course, like exhaustion, procedural default does not necessarily terminate the petitioner's claim. *See House v. Bell*, 547 U.S. 518, 536 (2006). This Court may still hear a petitioner's procedurally defaulted claims if he can demonstrate both cause and prejudice resulting from procedural default, or that a fundamental miscarriage of justice would occur if this Court refused to hear his claims because he is actually innocent. *Id*.

In this case, all of Golden's claims fail because they are meritless or procedurally defaulted. Those that are procedurally defaulted are not excused because Golden has failed to show cause for the default and he has not presented any new evidence establishing that it is "more likely than not" that no reasonable juror would have convicted him in light of the new evidence. *See Holmes v. Hardy*, 608 F.3d 963, 967-68 (7th Cir. 2010).

**III. DISCUSSION**

Golden's first seven claims are procedurally defaulted because he never fairly presented them though one complete round of the state's appellate process. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2013) (requiring petitioner to have presented claims to both the Illinois Appellate Court and the Illinois Supreme Court to avoid procedural default). Claims (1), (2), (3), (4), (5), and (6) are procedurally defaulted because they were never properly raised to the Illinois Appellate Court. Although he attempts to circumvent this procedural default by alleging that he did present the claims, in truth, while represented by counsel, Golden attempted to file a *pro se* brief containing these six claims. (Dkt. No 24-14). However, litigants represented by counsel are generally prohibited from also filing documents *pro se*. *See People v. Moore*, 189 Ill.2d 521, 533 (2000); *see also Coleman v. Thompson*, 501 U.S. 722, 757 (1991) (holding that where a brief was rejected based on a state rule requiring it to be filed within thirty days of the judgment, the claim raised in that brief were procedurally defaulted based on an independent and adequate state procedural rule). The Appellate Court rejected the hybrid representation and did not permit the brief. Therefore, these six claims, which Golden attempted to raise *pro se* while he was represented by counsel, were never fairly presented to the Illinois Appellate Court.

Illinois courts have discretion to relax the rule against hybrid representation; however, even discretionary state procedural rules can be the basis for barring habeas review. *Beard v. Kindler*, 558 U.S. 53, 60 (2009) ("[A] discretionary state procedural rule can serve as an adequate ground to bar federal habeas review."). Therefore, these six claims are procedurally defaulted because the Illinois Appellate Court declined to hear each on the independent and adequate state law ground that they violated the rule against hybrid representation.

Claim (7) is similarly procedurally defaulted because it was never raised to the Illinois Supreme Court. Although Golden sought leave to appeal from the Illinois Supreme Court, his

petition to that Court did not raise the claim that appellate counsel was ineffective for failing to directly appeal the trial Court's admission of evidence of other crimes evidence. (Dkt. No. 24-19). The petition did allege ineffective appellate counsel, but did not list admission of other crimes evidence as a basis for claiming ineffective appellate counsel. (*Id.* at 23–25). In the petition to the Illinois Supreme Court, Golden argued that the trial court erred in admitting other crimes evidence, but he did not frame this argument as a result of ineffective appellate counsel. (*Id.* at 18).

By failing to raise any of claims (1) through (7) in a complete round of state court review, including both the Illinois Appellate Court and the Illinois Supreme Court, before raising them in a federal habeas petition, Golden denies the Illinois court system the opportunity to "address and correct [the] alleged violation[]" and jeopardizes principles of comity and federalism. *Coleman*, 501 U.S. at 731. Therefore, Golden's first seven claims are procedurally defaulted.

This Court cannot review procedurally defaulted claims on the merits unless Petitioner demonstrates cause and prejudice for the default, or shows that this Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). To qualify for the exception for miscarriage of justice, the "habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Golden makes no attempt to argue the 'fundamental miscarriage of justice' exception and the Court will not consider it. *Crockett*, 542 F.3d at 1193 (holding petitioner's failure to raise an argument for either exception precludes a federal court from considering it).

Instead, Golden contends that post-conviction counsel failed to properly raise the claims present in his habeas petition to the Illinois Appellate Court. (Dkt. No. 1 at 5). Thus, Golden

attempts to show cause by claiming ineffective assistance of post-conviction counsel. This argument fails, however, because Golden does not have a right to counsel in state post-conviction proceedings and a claim of ineffective assistance does not constitute cause to excuse procedural default. *See Coleman*, 501 U.S. at 757; *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999); *Cawley v. DeTella*, 71 F.3d 691, 695-96 (7th Cir. 1995). Only in rare occasions may post-conviction counsel's failure to raise an ineffective assistance of trial counsel claim excuse procedural default. *See Martinez v Ryan*, 132 S. Ct. 1309, 1320 (2012) (in states where "claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."); *see also* 28 U.S.C. § 2254(i) ("[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under § 2254."). In other words, ineffective assistance of post-conviction counsel will excuse default where state law "does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) (citations omitted). Here, no such excuse exists because Golden had a meaningful opportunity to present his claim for ineffective assistance of trial counsel under Illinois law.

Collateral proceedings are not the first opportunity to raise an ineffective assistance of trial counsel claim in Illinois. *See People v. Miller*, 2013 IL App (1st) 111147, at ¶ 40 (Ill. App. Ct. 2013). Golden had the opportunity to present his ineffective assistance of trial counsel claims on direct review, however he failed to do so with respect to any reference to trial counsel's performance in claims (1) through (7). (*See* Dkt. No. 24-4). He cannot show cause to excuse the

default of these claims and, accordingly, the Court will not address prejudice. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

Claim (8), ineffective trial counsel for failure to quash warrantless arrest, fails on the merits. Relief is only available to petitioner if he can show that the state court acted contrary to or unreasonably applied Supreme Court precedent or unreasonably determined the facts. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 403–07 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) ("[F]actual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."). Golden contends that trial counsel was ineffective for failing to move to quash the arrest because police arrested him without a warrant, and thus the motion would have had a reasonable probability of success. (Dkt. No. 1 at 39-40).

The Illinois Appellate Court, however, correctly applied federal law when it found that trial counsel's failure to quash the arrest did not rise to the level of ineffective assistance of counsel because the outcome of the case likely would have been the same. *See Strickland*, 466 U.S. at 693–94 (describing that conduct of ineffective counsel must consist of serious errors, plus prejudice to the defendant); (Dkt. No. 24-3 at 7–8.). Warrantless, nonconsensual entry into a home for the purpose of a routine felony arrest violates the Fourth Amendment. *See Payton v. New York*, 445 U.S. 573, 585 (1980). However, if there is probable cause to arrest a suspect, statements made after an arrest, even if in violation of *Payton*, are not barred by the exclusionary rule. *See New York v. Harris*, 495 U.S. 14, 21 (1990).

Golden does not now, nor has he ever contended that police lacked probable cause to arrest him. And, indeed, the Illinois Appellate Court examined the record and affirmatively established that probable cause arose from Golden's conversations with undercover Officer

Mohammed. (Dkt. No. 24-3 at 4). Because the statements Golden made to police would have been admissible based on probable cause even if his counsel had moved to quash his arrest, he was not prejudiced by trial counsel's failure to raise the issue and that failure does not rise to the level of ineffective assistance of counsel. The Appellate Court did not unreasonably apply federal law nor make unreasonable factual determinations in reaching this result.

### IV. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a state court unless the court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a). A certificate of appealability may only issue if an "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability should issue only when the prisoner shows "both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Golden has not made a substantial showing of the denial of a constitutional right: reasonable jurists would not debate whether the challenges in his habeas petition should been resolved differently or determine that Golden deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The Court declines to issue a certificate of appealability.

### CONCLUSION

For the reasons stated, Golden's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied and the Court will not issue a certificate of appealability.

Date:   7/22/2016

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois